### 19062

The STATE, Respondent, v. Louis FULLER, Jr., Appellant.

(174 S. E. (2d) 774)

*Messrs. J. W. Bradford, W. K. Charles, Jr.,* and *John F. Beasley,* of Greenwood, and *William P. Greene, Jr.,* of Abbeville,

*William T. Jones, Esq., Solicitor,* of Greenwood, *for Respondent,*

*Messrs. J. W. Bradford, W. K. Charles, Jr.,* and *John F. Beasley,* of Greenwood, and *William P. Greene, Jr.,* of Abbeville, *for Appellant, in Reply,*

May 29, 1970.

Moss, Chief Justice.

Mary Christine Gardner, a white teenage girl of the Callison Community of Greenwood County, died on August 21, 1967, from a massive hemorrhage within her abdominal cavity, due to severance of one or more of the large blood vessels therein. There was evidence that she had many paired puncture wounds in many places on her body and such were inflicted with a two tined cooking fork.

Louis Fuller, Jr., the appellant herein, was arrested on August 22, 1967, and charged with the murder of Mary Christine Gardner. He was indicted for such murder by the Grand Jury of Greenwood County. J. W. Bradford, W. K. Charles, Jr., and John F. Beasley, able, competent and experienced attorneys of the Greenwood County Bar, were appointed to represent him. A change of venue, pursuant to

Section 17-548 of the Code, was granted on April 12, 1968, and the case was transferred from Greenwood County to Abbeville County for trial. Thereupon, William P. Greene, Jr., an able, competent and experienced attorney of the Abbeville County Bar, was added to defense counsel by appointment.

The case was brought to trial during the 1968 September Term of the Court of General Sessions for Abbeville County. At the trial, after an evidentiary hearing before the trial judge, the written confession of the appellant was introduced into evidence over his objection made on the ground that he was not accorded the procedural safeguards required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694, 10 A. L. R. (3d) 974.

There is evidence here that the appellant voluntarily, knowingly and intelligently waived his rights after receiving all the Miranda warnings. The trial judge found from the evidence presented to him that the confession made by the appellant was admissible because it was freely and voluntarily made and at a time when he was not acting under any duress or misapprehension.

At the close of the testimony in behalf of the State, the appellant made a motion for a directed verdict of not guilty on the ground that the State had failed to carry the burden of proof that the appellant had been accorded the procedural safeguards required by Miranda and that the evidence failed to establish that he waived his constitutional rights against self incrimination, and without the confession the State had failed to offer evidence of his guilt.

The motion by the appellant for a directed verdict was refused and it was announced to the court by his counsel that no evidence would be offered in his behalf. Counsel requested and was granted a recess so that they might confer with their client. When court reconvened, counsel for the appellant announced that he would like to enter a plea of guilty to the charge of murder contained in the indictment.

Prior to the acceptance of the plea of guilty, the trial judge personally conducted an examination of the appellant, with a stenographic record thereof being made by the court reporter, to determine whether the plea was being made voluntarily and with understanding of the nature of the charge, the consequences of the plea and the rights necessarily abandoned by such plea. It appears from the record that the appellant told the trial judge that he was nineteen years of age and had completed the eleventh grade in high school. He further told the judge that he was not under the influence of any alcoholic beverages, drugs or medication that would affect his ability to correctly answer the questions propounded by the court. In answer to further questions, the appellant told the court that he was represented by the four attorneys hereinbefore named and was fully satisfied with the efforts they had made in his behalf. He said that he had full opportunity to tell them everything he wanted to tell them and that they had contacted all the witnesses which he asked them to interview, and that they explained to him the possible punishment that he could receive upon the acceptance of the plea of guilty to murder. The trial judge then asked the defendant if he understood that the decision as to the punishment that he would receive would be left entirely to the jury and that such punishment would be either death by electrocution or life imprisonment, and knowing the possible punishment did he wish to change his plea from not guilty to guilty. The appellant gave affirmative answers to these questions. The trial judge also asked him concerning the confession he made and he admitted that his version of how the offense occurred, as was contained in the confession, was true.

The trial judge then inquired of each of the four attorneys appointed to defend the appellant whether after consultation with him that they were convinced that he knew what he was doing in entering a plea of guilty and whether he realized the seriousness of the offense to which he was pleading guilty, and the possible punishment he could receive. Each counsel answered in the affirmative.

The trial judge then stated:

"* * * it is the opinion of the Court that this Defendant fully realizes what he is doing, the seriousness of the offense, the possible punishment, and that he has been adequately and properly represented and advised by his counsel, and that he has reached this decision only after full and complete and numerous conversations and consultations with his court-appointed counsel."

After the trial judge made the above statement he asked the appellant if such was correct and the answer by him was "Yes, sir." The trial judge then accepted the appellant's plea of guilty to murder.

We conclude that the appellant, who was represented by counsel, understood the charge against him, the nature and effect of his plea of guilty and the two sentences which might lawfully be imposed upon him if he entered such plea and that he entered the plea of guilty to the charge of murder voluntarily, with full understanding of the effect and possible consequences of such plea.

The punishment for murder is fixed by Section 16-52 of the Code. It is provided that whoever is guilty of murder shall suffer the punishment of death; provided, however, that in any case in which the prisoner is found guilty of murder the jury may find a special verdict recommending him to the mercy of the court whereupon the punishment shall be reduced to imprisonment during the whole lifetime of the prisoner. The trial judge submitted to the jury, under appropriate instructions, the question of whether the appellant, who by his plea admitted that he was guilty of murder, should suffer the punishment of death by electrocution or life imprisonment. The jury, by its verdict, found that the appellant should suffer death by electrocution and such sentence was imposed by the trial judge. The motion of the appellant for a new trial and for judgment *non obstante veredicto* was denied. This appeal followed.

The exceptions of the appellant pose the question of whether the conviction was based upon a confession which was not voluntary under the procedural safeguards required by the Miranda case and whether the court erred in admitting into evidence various exhibits offered by the State. An incidental question is whether the trial judge was in error in refusing to grant a mistrial because of the publication of an article in a newspaper containing a statement that the trial judge was going to rule on the admissibility of the statement made by the appellant who was being tried on a murder charge.

It is our view that since the appellant entered a voluntary plea of guilty to murder, the above questions have become moot and academic.

The general rule is that a plea of guilty, voluntarily and understandingly made, constitutes a waiver of nonjurisdictional defects and defenses, including claims of violation of constitutional rights prior to the plea. An accused also waives the right to trial and the incidents thereof and the constitutional guarantees with respect to the conduct of criminal prosecutions. A plea of guilty is an admission or a confession of guilt, and as conclusive as a verdict of a jury; it admits all material fact averments of the accusation, leaving no issue for the jury, except in those instances where the extent of the punishment is to be imposed or found by the jury. 21 Am. Jur. (2d), Criminal Law, section 495; 22 C. J. S. Criminal Law § 424(1); *State v. Caldwell*, 269 N. C. 521, 153 S. E. (2d) 34, and the cases therein cited.

The case of *Thompson v. State*, 251 S. C. 593, 164 S. E. (2d) 760, was a *habeas corpus* proceeding. In affirming a judgment dismissing the writ, this court said:

"The evidence here sustains the finding of the trial judge that the plea of guilty made by the appellant was freely and understandingly made. The fact that the appellant's plea of guilty was made following a confession obtained during his

detention does not of itself make the plea involuntary and invalid. What was said in the case of *Busby v. Holman,* 5 Cir., 356 F. (2d) 75, can be appropriately applied here. We quote therefrom the following:

" 'It is settled by a host of authorities that a judgment on a plea of guilty which has been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandingly made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all nonjurisdictional defects in the prior proceeding against him. The judgment and sentence which follow a plea of guilty based solely upon the plea and not upon any evidence which may have been acquired improperly by the prosecutor. Accordingly, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made.'

"The appellant having voluntarily and understandingly entered a plea of guilty, such was a confession of guilt made in a formal manner and was equivalent to and as binding as a conviction after a trial on the merits. It had the same effect as a verdict of guilty and authorized the imposition of the punishment prescribed by law."

In the recent case of *McMann v. Richardson,* 398 U. S. ——, 90 S. Ct. 1441, 25 L. Ed. (2d) 763, decided by the Supreme Court of the United States, on May 4, 1970, the defendants had been convicted on their counselled admission in open court that each committed the crime charged against him. After unsuccessful applications for collateral relief in the state courts, each filed a petition for a writ of *habeas corpus* in the District Courts of New York, alleging that their pleas of guilty were induced by coerced confessions.

In reversing the three separate judgments of the Court of Appeals ordering hearings on the petitions for *habeas corpus* filed by the defendants, Mr. Justice White, writing the majority opinion, said:

"Since we are dealing with a defendant who deems his confession crucial to the State's case against him and who would go to trial if he thought his chances of acquittal were good, his decision to plead guilty or not turns on whether he thinks the law will allow his confession to be used against him. For the defendant who considers his confession involuntary and hence unusable against him at a trial, tendering a plea of guilty would seem a most improbable alternative. The sensible course would be to contest his guilt, prevail on his confession claim at trial, on appeal or, if necessary, in a collateral proceeding and win acquittal, however guilty he might be. The books are full of cases in New York and elsewhere, where the defendant has made this choice and has prevailed. If he nevertheless pleads guilty the plea can hardly be blamed on the confession which in his view was inadmissible evidence and no proper part of the State's case. Since by hypothesis the evidence aside from the confession is weak and the defendant has no reasons of his own to plead, a guilty plea in such circumstances is nothing less than a refusal to present his federal claims to the state court in the first instance—a choice by the defendant to take the benefits, if any, of a plea of guilty and then to pursue his coerced confession claim in collateral proceedings. Surely later allegations that the confession rendered his plea involuntary would appear incredible, and whether his plain bypass of state remedies was an intelligent act depends on whether he was so incompetently advised by counsel concerning the forum in which he should first present his federal claim that the Constitution will afford him another chance to plead.

"A more credible explanation for a plea of guilty by a defendant who would go to trial except for his prior confession is his prediction that the law will permit his ad-

missions to be used against him by the trier of fact. At least the probability of the State's being permitted to use the confession as evidence is sufficient to convince him that the State's case is too strong to contest and that a plea of guilty is the most advantageous course. Nothing in this train of events suggests that the defendant's plea, as distinguished from his confession, is an involuntary act. His later petition for collateral relief asserting that a coerced confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. The Constitution, however, does not render pleas of guilty so vulnerable."

In *Boykin v. Alabama,* 395 U. S. 238, 89 S. Ct. 1709, 23 L. Ed. (2d) 274, it was held that by a plea of guilty in a State criminal trial that the defendant waives three federal constitutional rights: (1) the privilege against compulsory self incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. The record in the present case shows that the guilty plea of the appellant represented a free and intelligent waiver on his part of the constitutional rights above set forth, and that such plea was voluntarily and understandingly made. All of this is evidenced by the reporter's stenographic transcript made at the time the plea of guilty was entered. The appellant, by his plea of guilty, waived his right to attack the legality of the confession that he had made and the admission of such into evidence. He likewise waived his objection to the admission of various exhibits offered by the State and of his motion for a mistrial.

In view of what we have heretofore said, we find the exceptions of the appellant to be without merit and they are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.