# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Matthew Jamison, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2012-212996

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
William P. Keesley, Post-Conviction Relief Judge

---

Opinion No. 27454
Heard March 5, 2014 – Filed October 22, 2014

---

## REVERSED

---

Assistant Attorney General Brian T. Petrano, of Columbia, for Petitioner.

Tricia A. Blanchette, of Columbia, for Respondent.

---

**JUSTICE KITTREDGE:** This is a post-conviction relief (PCR) matter. Respondent Matthew Jamison pled guilty to voluntary manslaughter and was sentenced to twenty years in prison. No direct appeal was taken. Respondent's first application for PCR was denied. Respondent filed a second PCR application alleging newly discovered evidence. The PCR judge granted relief, and the court

of appeals affirmed. *Jamison v. State*, Op. No. 2012-UP-437 (S.C. Ct. App. filed July 18, 2012). We reverse.

## I.

This case involves a shooting that occurred at a party one Saturday evening in June 2000, following a series of altercations between apparent rival drug dealers, one of whom was Respondent Matthew Jamison.[1] On the night of the shooting, Respondent encountered the rival group at a concert in Columbia, South Carolina. An eyewitness testified that the group walked past Respondent and "gave him a look like, yeah, we're going to get you tonight." After the concert, Respondent encountered the group again in a parking lot. Hundreds of people were crowded in the parking lot, and an eyewitness saw Respondent leaning against the front of a vehicle in the parking lot. According to Respondent, an individual he referred to as "Jig" pointed at him, and Jig and others with him approached Respondent as if they were going to "blitz" or jump Respondent. Respondent pulled a gun and fired shots towards the group. One of the bullets struck and killed the fifteen-year-old victim, an innocent bystander who was not involved in the ongoing dispute. By all accounts, the intended target was Jig.

Immediately following the shooting, Respondent was apprehended while attempting to flee from the scene. That night, Respondent gave a statement to police in which he admitted firing the gun into the crowd. Respondent was indicted for murder, but his attorney negotiated with the solicitor for Respondent to plead guilty to the lesser included offense of voluntary manslaughter.

Before accepting Respondent's guilty plea, the plea judge engaged in a thorough plea colloquy with Respondent, specifically including the following:

> The Court: Now, realizing, [Respondent], that when you plead guilty, you admit the truth of the allegation contained in this indictment against you. You're saying that I had a gun and I shot [the victim] and he died. You understand that?
>
> The Defendant: Yes, sir.
>
> The Court: All right. I tell you that, sir, because you may have some

---

[1] Several weeks prior to the shooting, it appears Respondent was attacked in his home by several men whose street nicknames are Jig, Little Thee, Fax, and Butter.

defenses to this charge, [Respondent]. Of course, I have no way of knowing that, but you need to realize that by pleading guilty here today, you give up any defenses you might have. Do you understand that, sir?

The Defendant: Yes, sir.

. . . .

The Court: Now, [Respondent], I'll ask you, once again, did you commit this offense?

The Defendant: Yes, sir.

The Court: All right. So, [Respondent], once again, you're telling me you are pleading guilty to . . . voluntary manslaughter, because you did, in fact, . . . shoot [the victim] and as a result of your gunshot, [the victim] was killed. You shot him and he died, is that correct?

The Defendant: Yes, sir.

. . . .

The Court: Now, [Respondent] has anyone promised you anything or held out any hope of reward in order to get you to plead guilty?

The Defendant: No, sir.

The Court: Has anyone threatened you or used force to get you to plead guilty?

The Defendant: No, sir.

The Court: Has anyone used any pressure or intimidation to cause you to plead guilty?

The Defendant: No, sir.

The Court: Have you had enough time to make up your mind as to
whether or not you want to plead guilty?

The Defendant:  Yes, sir.

The Court: Are you pleading guilty of your own free will and accord?

The Defendant:  Yes, sir.

Additionally, during the plea hearing, Respondent's counsel stated the following on behalf of Respondent:

[Respondent] had no individual animus against [the victim].  [The victim] was standing with a group of folks that had been engaged with [Respondent] some time in the past and that night as well and he fired towards that crowd because he thought that they were coming at him and he was coming at them.

And he understands the aspect we know in the law as transferred intent.  It was not a self-defense.  It may have been a very imperfect self-defense. *But those are the issues that we would have brought forward.*  But he had no individual animus.  He had no reason.  Didn't even know this boy.  It was a shot at a crowd of people in a very crowded environment in which this young man was struck and killed and died as a result.

(emphasis added).  The plea judge sentenced Respondent to twenty years in prison.  No direct appeal was taken.

In his first PCR application, Respondent alleged his guilty plea was not knowingly and voluntarily entered.  At the PCR hearing, plea counsel testified the theory of the defense was as follows:

It was that "Jig" had a gun and had come at—had come at [Respondent].  It was a very imperfect self-defense because nobody else sees a gun.  There was no other gun found, as I recall it.  [Respondent] in his statement to the police says something about—he fails to say to the police, I saw "Jig" with a gun while he was coming

at me.  His words were, "they were going to blitz me."  That means a whole bunch of them were going to jump him.  But later he tells me that "Jig" had a gun.  And we wouldn't ever verify that.  I mean, I talked to lots of witnesses, went to the scene, had a private investigator.  We went out several times trying to get any one person to say that "Jig" had a gun.  We couldn't do that.[2]

The PCR judge denied relief.  Respondent sought a writ of certiorari, and his counsel filed a *Johnson*[3] petition.  Respondent filed a *pro se* petition, in which he raised, for the first time, a newly discovered evidence claim.

Specifically, Respondent claimed that, while serving his prison sentence, he met a fellow inmate who allegedly was an eyewitness to the shooting incident and was willing to provide testimony to support Respondent's self-defense claim.  Attached to Respondent's *pro se* petition was an affidavit of Theotis Bellamy, in which Bellamy discussed the prior difficulties between Respondent and the group involved in the incident and stated he believed Respondent would have been further harmed "if things did not happen the way they did" on the night of the shooting.  Bellamy's affidavit also stated he previously had an opportunity to give his version of what happened on the night of the shooting; however, he did not share his knowledge with defense investigators earlier because Jig had threatened his family and he was afraid.  Ultimately, the court of appeals denied the petition.

While the *Johnson* petition from his first PCR application was pending before the

---

[2] Indeed, by all accounts, finding willing witnesses was an extremely difficult task.  At the plea hearing, the solicitor's comments revealed the similar difficulty the State encountered in obtaining witnesses:

> One of the other tragic parts of this case was that nobody even came forward.  Of the hundreds of people at the party, not one was willing to give the police a statement that night as to what they saw and heard.  Even when we were preparing this case . . . out there trying to find other witnesses, these people: "Jig" and "Thee," these people that could have been witnesses—"Butter," who is a relative of the victim's, they weren't even willing to come forward and help the State out in this case.

[3] *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

court of appeals, Respondent filed a second PCR application alleging newly discovered evidence and attached a second affidavit by Bellamy that was essentially the same as the first.

At the second PCR hearing, Respondent admitted shooting the victim but maintained he was defending himself against the group led by Jig. Respondent claimed he was scared when the group approached him because they had previously shot at and threatened him and jumped on one of his family members. Respondent explained that his guilty plea was influenced by the fact that no witness would come forward and corroborate his contention that Jig had a weapon.[4] Respondent stated he would not have pled guilty but would have insisted on going to trial if he could have presented a stronger self-defense claim.

Bellamy testified at the PCR hearing that he knew the members of the rival group and that they carried guns. Specifically, Bellamy said he saw Jig with a gun in his pants just before the shooting occurred. Bellamy stated he saw the group approach Respondent at the after-party, gesturing "like they're fixing to pull out weapons," and that Respondent shot at Jig before Jig could shoot Respondent. Bellamy stated he did not come forward previously because Jig threatened him and his family, but now that Jig was serving time in the federal penitentiary, he felt more comfortable testifying in court.

The PCR judge granted Respondent relief on the basis of "fundamental fairness" and ordered a new trial. The PCR judge found Respondent met his burden of proving that Bellamy's eyewitness testimony constituted newly discovered evidence and that Bellamy's testimony would likely change the result at trial. In granting relief, the PCR judge stated:

> While the record demonstrates that a claim of self-defense was known to the Applicant from the outset and that his attorney tried to get someone to back up that claim, no one would come forward. This

---

[4] Respondent explained that although he admitted the shooting from the outset, his counsel advised him that it would be difficult to establish a self-defense claim that would overcome the State's physical evidence and Respondent's statement to police on the night of the shooting, in which Respondent did not claim to be acting in self-defense or explain that he fired shots because he was scared for his life when he saw Jig with a gun.

Court is concerned about granting a new trial because a claim of self-defense can be waived. Yet, no law has been cited to the Court concerning whether the entry of a guilty plea where self-defense was specifically mentioned, constitutes a waiver of that defense and prohibits granting a new trial on [the basis of] after-discovered evidence when someone does not come forward to corroborate that claim. . . . Here, the Applicant could have gone to trial [and] told his version of the events to the jury . . . . While the Court has concerns about granting a new trial when the Applicant clearly knew he had a self-defense claim from the beginning and did not present it, the Court feels that the issue is one of fundamental fairness. . . . Plea counsel informed the court and undoubtedly advised the Applicant that the claim of self-defense could not be established. It was too risky to attempt, in the opinion of plea counsel. The only reasonable reading of this record is that the Applicant relied upon that advice to elect to accept the plea bargain.[5] . . . So, despite the fact that there is a question in the Court's mind as to whether a person who waives a known claim of self-defense can thereafter assert it when a corroborating witness comes forth with after-discovered evidence, in the absence of authority being cited by either side on this issue, this Court feels that fairness dictates a new trial.

The State sought a writ of certiorari, which was granted, but the court of appeals affirmed the PCR judge's order. *Jamison v. State*, Op. No. 2012-UP-437 (S.C. Ct. App. filed July 18, 2012). This Court granted the State's petition for a writ of certiorari to review the court of appeals' decision.

## II.

"This Court gives deference to the PCR judge's findings of fact, and 'will uphold the findings of the PCR court when there is any evidence of probative value to support them.'" *Jordan v. State*, 406 S.C. 443, 448, 752 S.E.2d 538, 540 (2013) (quoting *Miller v. State,* 379 S.C. 108, 115, 665 S.E.2d 596, 599 (2008)). "However, we review questions of law *de novo,* and 'will reverse the decision of the PCR court when it is controlled by an error of law.'" *Id.* (quoting *Goins v. State,* 397 S.C. 568, 573, 726 S.E.2d 1, 3 (2012)).

---

[5] Respondent has never raised an ineffective assistance of counsel claim regarding counsel's advice to accept the plea bargain.

## A.

The State contends Respondent's newly discovered evidence claim is successive and thus procedurally barred because it was previously raised to the court of appeals in Respondent's *pro se Johnson* petition in the appeal of his first PCR application.  We disagree.

The South Carolina Uniform Post-Conviction Procedure Act (PCR Act) allows an applicant to file an application for relief "[i]f the applicant contends that there is evidence of material facts not previously presented and heard that requires vacation of the conviction or sentence."  S.C. Code Ann. § 17-27-45(C) (2014) (allowing applications to be filed within one year of the date of actual discovery of the facts or from the date when the facts "could have been ascertained by the exercise of reasonable diligence").

Following Respondent's first PCR hearing and the subsequent order denying relief, Respondent discovered Bellamy was willing to testify to what happened on the night of the shooting.  Accordingly, Respondent attached Bellamy's first affidavit to his *pro se* petition to the court of appeals pursuant to *Johnson v. State*.  The court of appeals denied the petition, stating in its order the decision was made "[a]fter careful consideration of the entire record as required by *Johnson v. State*."

The State argues the language in the court of appeals' order reflects that its review of all issues was on the merits, and thus, Respondent's second PCR application was successive because Bellamy's affidavit was previously presented to and considered by the court of appeals.

A petition filed pursuant to *Johnson v. State* is the post-conviction relief equivalent of a direct appeal filed pursuant to *Anders v. California*.[6]  *Johnson*, 294 S.C. at 310, 364 S.E.2d at 201.  This Court recently held that, "[u]nder the *Anders* procedure, an appellate court is required to review the entire record, including the complete trial transcript, for any *preserved* issues with potential merit."  *McHam v. State*, 404 S.C. 465, 475, 746 S.E.2d 41, 46 (2013) (citations omitted).  Thus, this Court concluded the merits of an unpreserved claim were not considered by the court of appeals on direct appeal pursuant to *Anders*.  *Id.* at 475, 746 S.E.2d at 47 (noting issues raised on direct appeal and found to be unpreserved may be the

---

[6] 386 U.S. 738 (1967).

subject of a subsequent PCR claim).

Although Bellamy's affidavit was presented to the court of appeals in Respondent's *pro se* petition, it was not properly before the court of appeals because it was not part of the lower court record. *See* Rule 243(f), SCACR (the appendix shall include only matter that was presented to the PCR court). Because the discovery of Bellamy's testimony was not properly before the court of appeals, it was not part of the *Johnson* review. *McHam*, 404 S.C. at 475, 746 S.E.2d at 47. Therefore we find, as a procedural matter, this issue was properly raised in Respondent's second PCR application.

**B.**

The State also argues that because Respondent pled guilty, he is therefore not entitled to PCR in the face of newly discovered evidence. Specifically, the State contends that by pleading guilty, Respondent waived any argument relating to potential trial evidence, including claims of newly discovered evidence. Notably, Respondent has never argued that his guilty plea was entered involuntarily or unknowingly or that he pled guilty as a result of ineffective assistance of counsel; rather, the sole basis upon which Respondent has claimed to be entitled to PCR was because of the newly discovered evidence of Bellamy's testimony. Thus, the narrow issue presented to this Court is whether and to what extent an otherwise valid guilty plea may be vacated in PCR proceedings on the basis of newly discovered evidence.

Traditionally, in South Carolina, "'[t]o obtain a new trial based on after discovered evidence, the party must show that the evidence: (1) would probably change the result if a new trial is had; (2) has been discovered since trial; (3) could not have been discovered before trial; (4) is material to the issue of guilt or innocence; and (5) is not merely cumulative or impeaching.'" *McCoy v. State*, 401 S.C. 363, 368 n.1, 737 S.E.2d 623, 625 n.1 (2013) (quoting *Clark v. State*, 315 S.C. 385, 387–88, 434 S.E.2d 266, 267 (1993)).

The State contends the PCR judge committed an error of law in applying this traditional, five-factor newly discovered evidence test in evaluating Respondent's PCR claim. Specifically, the State argues this traditional five-factor test applies only where a defendant has gone to trial and was convicted—not where a defendant pled guilty. The State further contends that, during the plea colloquy, Respondent waived his right to have a trial and present any defenses, and therefore,

Respondent may not subsequently raise a PCR claim on the basis of newly discovered evidence relating to a claim of self-defense.

"[I]n South Carolina, a guilty plea constitutes a waiver of nonjurisdictional defects and claims of violations of constitutional rights." *State v. Rice*, 401 S.C. 330, 331–32, 737 S.E.2d 485, 485–86 (2013) (citing *Hyman v. State,* 397 S.C. 35, 44, 723 S.E.2d 375, 379 (2012)). "'A guilty plea represents a break in the chain of events which has preceded it in the criminal process.'" *Id.* at 332, 737 S.E.2d at 486 (quoting *Tollett v. Henderson,* 411 U.S. 258, 267 (1973)). By entering a guilty plea, "[a]n accused [] waives the right to trial and the incidents thereof and the constitutional guarantees with respect to criminal prosecutions." *Rivers v. Strickland*, 264 S.C. 121, 124, 213 S.E.2d 97, 98 (1975) (citation omitted). "A plea of guilty is an admission or a confession of guilt, and [is] as conclusive as a verdict of a jury; it admits all material fact averments of the accusation, leaving no issue for the jury, except in those instances where the extent of the punishment is to be imposed or found by the jury." *State v. Fuller*, 254 S.C. 260, 266, 174 S.E.2d 774, 777 (1970) (citations omitted); *see North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (noting guilty pleas constitute a waiver of trial and an express admission of guilt upon which a sentence may be imposed). Thus, "'[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *Rice*, 401 S.C. at 332, 737 S.E.2d at 486 (quoting *Tollett,* 411 U.S. at 267).

Nevertheless, the PCR Act provides that "[a]ny person who has been convicted of, or sentenced for, a crime and who claims . . . that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice" is entitled to seek post-conviction relief. S.C. Code Ann. § 17-27-20(A)(4) (2014). Thus, by its plain language, the PCR Act affords "any person" the ability to seek post-conviction relief on the basis of newly discovered evidence—not just individuals convicted and sentenced following trial. Accordingly, we must reject the State's claim that the waiver of trial and admission of guilt encompassed in a guilty plea necessarily preclude post-conviction relief in *all* cases.

We nevertheless acknowledge that a valid guilty plea must be treated as final in the vast majority of cases. Indeed, "[w]hat is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, but whether, years

later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof." *McMann v. Richardson,* 397 U.S. 759, 773 (1970) (noting the compelling interests in maintaining the finality of guilty-plea convictions validly obtained). "Furthermore, there must be some consequence attached to the decision to plead guilty." *People v. Schneider*, 25 P.3d 755, 761 (Colo. 2001) ("A defendant who voluntarily and knowingly enters a plea accepting responsibility for the charges is properly held to a higher burden in demonstrating to the court that newly discovered evidence should allow him to withdraw that plea.").

Although we find that a guilty plea does not preclude post-conviction relief following a guilty plea in all circumstances, we nonetheless conclude that the traditional, five-factor newly discovered evidence test is not the proper test for analyzing whether a PCR applicant is entitled to relief on the basis of newly discovered evidence following a guilty plea. As the Supreme Court of Colorado has noted, in the case of a guilty plea:

> [I]t was not an independent trier of fact that determined the defendant's guilt based upon sworn trial testimony—it was the defendant who acknowledged his own guilt. Because of that simple fact, the trial court handling the postconviction proceeding is necessarily in a different position. That court does not have the full record of the prior trial, but it does have the defendant's own statements of guilt. [The traditional, five-factor newly discovered evidence test] presumes that the [PCR] judge is in a position to weigh the new testimony against that provided at the prior trial and assess whether an acquittal verdict would enter based upon new evidence. In the circumstance in which there never was a trial on the charges, the [PCR] court is hampered in that assessment.

*Id.* Indeed, the traditional, newly discovered evidence factors are "difficult, if not impossible to apply when the moving party pleaded guilty instead of standing trial." *In re Reise*, 192 P.3d 949, 954 (Wash. Ct. App. 2008).

Guided by the language of section 17-27-20(A)(4) of the PCR Act, we hold that, when a PCR applicant seeks relief on the basis of newly discovered evidence following a guilty plea, relief is appropriate only where the applicant presents evidence showing that (1) the newly discovered evidence was discovered after the

entry of the plea and, in the exercise of reasonable diligence, could not have been discovered prior to the entry of the plea; and (2) the newly discovered evidence is of such a weight and quality that, under the facts and circumstances of that particular case, the "interest of justice" requires the applicant's guilty plea to be vacated. In other words, a PCR applicant may successfully disavow his or her guilty plea only where the interests of justice outweigh the waiver and solemn admission of guilt encompassed in a plea of guilty and the compelling interests in maintaining the finality of guilty-plea convictions. In so holding, we caution that it will be the rare case indeed where the interests of justice will require that a knowing and voluntary guilty plea be vacated through post-conviction relief on the basis of newly discovered evidence, for an unconditional guilty plea involving an admission of guilt and a waiver of trial and all defenses will generally preclude any subsequent challenge to factual guilt. *Cf. Reise*, 192 P.3d at 955 (finding a defendant may withdraw his guilty plea on the basis of newly discovered evidence only when necessary to correct manifest injustice). Such a determination will not be resolved in a formulaic manner, but will necessarily be context dependent.

Turning to the facts of this case, we find there is evidence in the record to support the PCR judge's finding that Respondent could not have discovered Bellamy's testimony prior to pleading guilty. We, however, find the interests of justice do not require that Respondent's guilty plea and sentence be vacated and conclude the PCR judge erred in granting relief. During the thorough plea colloquy, Respondent admitted having a gun and shooting the victim, specifically waived the right to present any defense, and testified that he did so freely and voluntarily. Respondent's PCR testimony reveals that his decision to plead guilty rested on several considerations: the strength of the State's evidence against him, the relative weakness of his self-defense claim, and his counseled determination that it was to his advantage to plead guilty to the lesser charge of manslaughter in order to avoid going to trial on the indicted offense of murder. Although Respondent might have pled differently had he known Bellamy could provide eyewitness testimony, Respondent is bound by his plea and conviction unless he can demonstrate the interest of justice requires that they be vacated. To grant relief under these circumstances would undermine the solemn nature of a guilty plea and the finality that generally attaches to a guilty plea.

"The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady v. United States*, 397 U.S. 742, 757 (1970). "A defendant is not entitled to withdraw his plea merely because he

discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id*. Further, the weight and quality of Bellamy's testimony as "evidence of *material* facts, not previously presented and heard" is severely undermined because it pertains not to a theory of self-defense but to one of transferred self-defense. S.C. Code Ann. § 17-27-20(A)(4) (emphasis added). Specifically, Bellamy's testimony would tend to show Respondent fired shots at Jig before Jig could shoot Respondent; however, the victim who died in this case was an innocent, fifteen-year-old bystander, not Jig. The transferability of intent in a self-defense claim has not been recognized in South Carolina, and Respondent does not ask this Court to recognize it now. *See State v. Porter*, 269 S.C. 618, 622, 239 S.E.2d 641, 643 (1977) (noting the theory of transferred self-defense has not been accepted in South Carolina); *cf State v. Wharton*, 381 S.C. 209, 215, 672 S.E.2d 786, 789 (2009) (noting the applicability of the doctrine of transferred intent to voluntary manslaughter cases remains an unsettled question in South Carolina). Therefore, Bellamy's testimony does not constitute evidence of *material* facts within the language of section 17-27-20(A)(4), and Respondent's guilty plea made without the knowledge of Bellamy's potential testimony does not constitute an injustice that would permit Respondent to disavow his guilty plea. Rather, given the totality of the circumstances of this particular case, we find the interest of justice is best served by enforcing Respondent's validly entered guilty plea and upholding Respondent's conviction and sentence.

## III.

Because Bellamy's testimony does not constitute evidence of material facts not previously presented and heard that, in the interest of justice, requires Respondent's conviction and sentence to be vacated, Respondent is not entitled to relief. In reversing the court of appeals, we reinstate Respondent's conviction and sentence pursuant to his guilty plea.

**REVERSED**.

**TOAL, C.J. and HEARN, J., concur. PLEICONES, J., dissenting in a separate opinion in which BEATTY, J., concurs.**

**JUSTICE PLEICONES:** While I find great appeal in the majority's thoughtful "in the interest justice" test, I respectfully dissent as I would adhere to our traditional test to determine whether a post-conviction relief (PCR) applicant is entitled to a new trial based on after discovered evidence. Applying our traditional test, I would affirm the court of appeals as I am bound to uphold the PCR judge's order when there is evidence in the record to support the decision.

Rather than adopt a new test, I adhere to the five-part inquiry we recently affirmed to determine whether a PCR applicant is entitled to a new trial based on after discovered evidence after entering a guilty plea. *See McCoy v. State*, 401 S.C. 363, 368, 737 S.E.2d 623, 625 n.1 (2013). In my opinion, the "interest of justice" is served best by applying the same standard to determine if a PCR applicant is entitled to a new trial, whether the applicant has pled guilty or been convicted by a jury. I fear the majority's new test may give rise to the unintended consequence of dissuading criminal defendants from entering guilty pleas, further contributing to our already crowded General Sessions dockets.

The majority implicitly acknowledges, as I believe it must, that it is adopting a new test. Under the majority's framework, the key inquiry, one which differs substantially from the standard affirmed in *McCoy*, is whether "the newly discovered evidence is of such a weight and quality that, under the facts and circumstances of that particular case, the 'interest of justice' requires the applicant's guilty plea be vacated." Since this is a new rule, were we to adopt it, I would apply it prospectively. *See Talley v. State*, 371 S.C. 535, 541, 640 S.E.2d 878, 881 (2007). Further, even were we to apply this new test to Respondent, I would find the "interest of justice" standard requires a factual determination and is one which should be made by the PCR judge. Therefore, I would remand to the PCR judge to determine whether Bellamy's testimony constitutes after discovered evidence under this new analytical framework.

As I would apply the standard analytical framework to determine whether the PCR judge properly found Bellamy's testimony constitutes after discovered evidence, I turn to the five factors affirmed in *McCoy*. In my view, the following evidence supports a finding that Bellamy's testimony constitutes after discovered evidence: (1) Bellamy testified that Jig had a gun, and Respondent shot Jig after Jig gestured towards Respondent in a manner that suggested Jig was going to pull out his weapon; (2) Respondent discovered Bellamy's testimony after the entry of his guilty plea; (3) Respondent could not have discovered the testimony before his plea because Jig secured Bellamy's silence by threatening Bellamy and his family; (4) Bellamy's testimony is material because it tends to prove Respondent's claim of

self-defense;[7] and (5) Bellamy's testimony is not merely cumulative or impeaching because no one gave the police a statement as to what happened on the night of victim's murder.  *See McCoy*, 401 S.C. at 368, 737 S.E.2d at 625 n.1 (outlining the five factors to determine whether a PCR applicant is entitled to a new trial on the basis of after discovered evidence).  Employing our standard analysis, I find there is evidence in the record to affirm the court of appeals' decision even though the PCR judge failed to make explicit findings on the after discovered evidence issue.  *See Williams v. State*, 363 S.C. 341, 343–44, 611 S.E.2d 232, 233 (2005) (finding this Court will uphold the PCR judge's findings if there is any evidence of probative value in the record to support them); Rule 220(c), SCACR (stating this Court may affirm any ruling, order, decision, or judgment upon any ground appearing in the record).

I disagree with the majority's finding that Bellamy's testimony is not material on the basis that we have not recognized "the transferability of intent in a self-defense claim."  In my opinion, if there is any such doctrine as "transferred self-defense," it has no applicability to this case.[8]  Whether a defendant harms an unintended victim while acting in self-defense is irrelevant since the question is whether the

---

[7] *See State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011).

[8] Below is one formulation of the doctrine:

> [O]ne who kills in self-defense does so without the mens rea that otherwise would render him culpable of the homicide. . . .

> However, if A had no criminal intent with respect to B, as where A is exercising a lawful right of self-defense, [no criminal intent] could exist as to C. It follows, then, that A in shooting C has not committed a criminal act, the essential [sic] of a mens rea being impossible of proof. The inquiry must be whether the killing would have been justifiable if the accused had killed the person whom he intended to kill, as the unintended act derives its character from the intended.

*State v. Clifton*, 290 N.E.2d 921, 923 (Ohio Ct. App. 1972).

defendant's state of mind entitled him to react as he did. *See, e.g.*, *Dickey*, 394 S.C. at 499, 716 S.E.2d at 101. On the other hand, transferred intent permits a jury to find a defendant criminally responsible even though the defendant did not have the "intent" to harm the victim. *See State v. Fennell*, 340 S.C. 266, 271 - 72, 531 S.E.2d 512, 515 (2000) (explaining transferred intent as a legal fiction by which a jury may convict a defendant even though he did not act with the requisite *mens rea* towards an unintended victim). Thus, a defendant need not have a specific "intent" in order to assert a viable claim of self-defense; instead, the only question is whether Bellamy's testimony would have entitled him to a charge on self-defense. Although the answer to this question is undeniably close, and is one that underscores the important gatekeeping function of our PCR judges, I am constrained by our standard of review. *See Williams*, 363 S.C. at 343–44, 611 S.E.2d at 233.

Because I would adhere to the five factor test set forth in *McCoy*, and because I find there is probative evidence in the record to support the PCR judge's findings, I would affirm the court of appeals.

**BEATTY, J., concurs.**