**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 17-7466**

———————

MATTHEW JAMISON,

        Petitioner - Appellee,

    v.

LEVERN COHEN,

        Respondent - Appellant,

    and

BRYAN P. STIRLING,

        Respondent.

———————

Appeal from the United States District Court for the District of South Carolina, at Beaufort. Margaret B. Seymour, Senior District Judge. (9:15-cv-02859-MBS)

———————

Argued: October 30, 2018            Decided: December 3, 2018

———————

Before NIEMEYER, THACKER, and RICHARDSON, Circuit Judges.

———————

Vacated and remanded by unpublished by per curiam opinion.

———————

**ARGUED:** Susannah Rawl Cole, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellant. Gregory Dolin,

UNIVERSITY OF BALTIMORE SCHOOL OF LAW, Baltimore, Maryland, for Appellee. **ON BRIEF:** Alan Wilson, Attorney General, Donald J. Zelenka, Deputy Attorney General, Melody J. Brown, Senior Assistant Deputy Attorney General, Alphonso Simon Jr., Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellant. Polina Katsnelson, Law Clerk, UNIVERSITY OF BALTIMORE SCHOOL OF LAW, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Warden Levern Cohen ("Appellant" or "State") appeals from the district court's order granting habeas relief to Matthew Jamison ("Appellee") pursuant to 28 U.S.C. § 2254. Appellee pled guilty to voluntary manslaughter for shooting and killing a bystander in a crowd of people. He was sentenced to 20 years in prison. Over four years later, during Appellee's post-conviction proceedings in state court, an alleged eyewitness submitted an affidavit and offered testimony supporting the notion that Appellee acted in self defense.

The state post-conviction review ("PCR") court determined that the eyewitness's affidavit and testimony constituted newly discovered evidence that warranted a new trial under state law. However, on appeal the South Carolina Supreme Court developed a modified test for considering whether a guilty plea (as opposed to a conviction) may be undermined by newly discovered evidence. The state supreme court then applied that test to Appellee, and, without offering him a hearing, held that Appellee did not meet that test.

Appellee then filed the instant § 2254 petition in the district court, alleging that the state supreme court violated his Fourteenth Amendment rights to due process and equal protection. The district court granted relief, explaining that the state supreme court should have remanded the case to the PCR court for a hearing and determination of whether Appellee satisfied the new test.

We vacate and remand. Appellee challenges the constitutionality of a post-conviction court's decision not to afford him a hearing on a new state law test. But,

3

because Appellee challenges a proceeding collateral to detention, and not to the detention itself, his claim is not cognizable on federal habeas review and should have been dismissed.

I.

A.

Factual Background

In the spring of 2000, Appellee had some unfortunate encounters with a man named Jamie Jackson, also known as "Jig," and Jig's companions. On one occasion, they "beat [Appellee] up . . . pistol whipped him [and] shot at [him]." *Jamison v. Cohen*, 211 F. Supp. 3d 754, 757 (D.S.C. 2016). They also allegedly assaulted Appellee's sister, and during this incident, "hit [Appellee]'s child in the face." *Id.* at 756.

On June 11, 2000, Appellee attended a party in Columbia, South Carolina, where he was "approached by Jig and a number of his cohorts." *Jamison*, 211 F. Supp. 3d at 756. Appellee opened fire toward Jig's group, and as a result shot and killed a 15 year old boy, who happened to be "at the wrong place . . . at the wrong time." *Id*. at 757. Appellee was indicted for murder with malice aforethought, but he pled guilty to the lesser offense of voluntary manslaughter. He acknowledged that he was "giv[ing] up any defenses [he] might have." *Id*. at 757. Appellee was sentenced to 20 years in prison, and he did not file a direct appeal. *See id*. at 758.

Over four years later, while Appellee's first petition for PCR relief was progressing through the state courts, an alleged eyewitness to the shooting, Theotis Bellamy, signed an affidavit (the "Bellamy Affidavit"). He stated that on the night of the

4

shooting, he "noticed that [Jig] appeared to have a gun" and "the other guys usually have guns also." S.J.A. 45.[1] Bellamy "saw [Jig and his entourage] approach [Appellee,] who was minding his own business as usual." *Id.* Then Jig "looked as if he was reaching for his gun or something while approaching [Appellee] with some other[] fellas, so [Appellee] did what he had to do to keep from being killed." *Id.* Bellamy averred that he did not give the statement earlier because he was "scared" of Jig -- Jig had told Bellamy's brother "if [Bellamy] told what had happened, something was going to happen to [Bellamy]." *Id.* However, because Jig was in prison at the time of the affidavit, Bellamy finally felt comfortable coming forward. *See id.* at 45, 61–62.

B.

State Court Proceedings

On November 28, 2006, Appellee filed a second petition for PCR relief, this time based on the purported newly discovered evidence in the Bellamy Affidavit. The PCR court held a hearing on Petitioner's second PCR application, at which Bellamy testified that Jig's group "approached [Appellee] like they're fixing to . . . pull out weapons." *Jamison*, 211 F. Supp. 3d at 762. Bellamy "knew Jig had a gun on him" that "he [was] about to pull," so, in his view, Appellee "had to defend himself." *Id.* Bellamy also testified that Jig pulled the victim in front of him and used him as a human shield that night. *See id.*

---

[1] References to "J.A." and "S.J.A." refer to the contents of the Joint Appendix and Supplemental Joint Appendix, respectively, filed by the parties in this appeal.

5

On June 30, 2008, the PCR court issued an order explaining that "the eyewitness testimony of Mr. Bellamy constituted newly discovered evidence that was material to a claim of self-defense and warranted granting a new trial." *Jamison*, 211 F. Supp. 3d at 762. The court found that Petitioner

> had met the test set forth in *State v. Spann*, 334 S.C. 618, 513 S.E.2d 98 (1999); that is, the newly discovered evidence (1) is such that it would probably change the result if a new trial were granted; (2) has been discovered since the trial; (3) could not in the exercise of due diligence have been discovered prior to trial; (4) is material; (5) is not merely cumulative or impeaching.

*Id*. (the "*Spann* test").

After withdrawing this order in favor of holding further proceedings on an unrelated procedural issue, on October 14, 2008, the PCR court upheld the original order and awarded Appellee a new trial based on the "after-discovered evidence" of the Bellamy Affidavit and testimony. *See Jamison*, 211 F. Supp. 3d at 763. The PCR court stated:

> While the record demonstrates that a claim of self-defense was known to [Appellee] from the outset and that his attorney tried to get someone to back up that claim, no one would come forward. This Court is concerned about granting a new trial because a claim of self-defense can be waived. Yet, no law has been cited to the Court concerning whether the entry of a guilty plea where self-defense was specifically mentioned, constitutes a waiver of that defense and prohibits granting a new trial on after-discovered evidence when someone does not come forward to corroborate the claim . . . . He was facing life imprisonment. He entered a plea to a lesser offense because he could not get anyone to back up his claim of self-defense.

*Id.* (internal quotation marks omitted).  The State then filed a petition for certiorari to the South Carolina Court of Appeals, which granted the petition and affirmed the PCR court in a short, per curiam order.  *See Jamison v. State*, No. 2012-UP-437, 2012 WL 10862447 (S.C. Ct. App. July 18, 2012).

On May 16, 2013, the State appealed to the South Carolina Supreme Court, arguing that the *Spann* test "applies only to trials, not guilty pleas," and, by its nature, a guilty plea constitutes a waiver of defenses.  J.A. 184.  On October 22, 2014, the South Carolina Supreme Court reversed the Court of Appeals.  First, it held that South Carolina law "affords 'any person' the ability to seek post-conviction relief on the basis of newly discovered evidence -- not just individuals convicted and sentenced following trial," and thus, it "reject[ed] the State's claim that the waiver of trial and admission of guilt encompassed in a guilty plea necessarily preclude post-conviction relief in *all* cases." *See Jamison v. State*, 765 S.E.2d 123, 129 (S.C. 2014) (emphasis in original).

Critically, however, the South Carolina Supreme Court then stated, "We nevertheless acknowledge that a valid guilty plea must be treated as final in the vast majority of cases," and "there must be some consequence attached to the decision to plead guilty."  *Jamison*, 765 S.E.2d at 129 (internal quotation marks omitted).  It reasoned that the "five-factor [*Spann* test] is not the proper test for analyzing whether a PCR applicant is entitled to relief on the basis of newly discovered evidence *following a guilty plea*."  *Id.* (emphasis supplied).

A majority of the state supreme court, against two dissenters, then sua sponte fashioned a test for determining when relief is appropriate where a petitioner seeks relief

based on newly discovered evidence after a guilty plea.  That test is as follows: "(1) the newly discovered evidence was discovered after the entry of the plea and, in the exercise of reasonable diligence, could not have been discovered prior to the entry of the plea; and (2) the newly discovered evidence is of such a weight and quality that, under the facts and circumstances of that particular case, the 'interest of justice' requires the applicant's guilty plea to be vacated."  *Id.* at 130 (the "*Jamison* test").  Then, without remanding or holding a hearing, the majority held that Petitioner did not meet that test.  Specifically, it held the "interests of justice do not require that [Appellee's] guilty plea and sentence be vacated."  *Id*.  This is because "[Appellee] admitted having a gun and shooting the victim, specifically waived his right to present any defense, and testified that he did so freely and voluntarily."  *Id*.  The state supreme court thus reinstated Appellee's conviction and sentence.  *See id.* at 131.

On November 4, 2014, Appellee filed a petition for rehearing of the state supreme court's decision.  He did not mention federal due process or equal protection, but he "urge[d]" the state supreme court to "address the threshold matter of retroactivity and find that the new rule must only be applied prospectively."  J.A. 231.  A majority of the state supreme court denied the petition without analysis.

C.

Federal Court Proceedings

On July 22, 2015, Appellee filed the instant § 2254 petition in the district court.  Appellee raised three claims: ineffective assistance of counsel, which is not at issue here; due process violation because "the South Carolina Supreme Court . . . adopted the

8

'interest of justice' test over the 'traditional' test and applied it retroactively," J.A. 12; and due process and equal protection violations "under full and fair hearing doctrine," i.e., he was "denied the full and fair opportunity along with [a] hearing in the state court(s)," *id*. at 13.

Appellee filed a motion for summary judgment, which the district court granted in relevant part. The district court explained, "[T]he case should have been remanded to the second PCR judge in order for Petitioner to make his case for a new trial utilizing the 'interest of justice' test." *Jamison*, 211 F. Supp. 3d at 769. The district court continued:

> Under the[] facts [of this case] and the second PCR judge's decision that it would be fundamentally unfair to prevent Petitioner from seeking to establish a claim of self-defense, the affirmance of the second PCR judge by the South Carolina Court of Appeals, and the dissenting opinion [in the state supreme court] . . . , the court concludes that the South Carolina Supreme Court majority's application of a newly created evidentiary rule was contrary to, or involved an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id*. The only United States Supreme Court law cited in this part of the decision was *Washington v. Texas*, 388 U.S. 14 (1967), which, according to the district court, establishes the "right [of Appellee] to present his own witnesses to establish a defense." *Jamison*, 211 F. Supp. 3d at 769. Appellant timely noted this appeal.

## II.

When a claim has been adjudicated on the merits in state court, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act ("AEDPA") only if the state court's determination:

9

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). We review the district court's analysis of § 2254 de novo. *See Bell v. Ozmint*, 332 F.3d 229, 233 (4th Cir. 2003).

"[A] circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis supplied). We address issues of cognizability on collateral review de novo. *See United States v. Foote*, 784 F.3d 931, 935–36 (4th Cir. 2015).

III.

At the outset, we highlight the narrow scope of this appeal. As set forth in Appellee's response brief, he "is not asking to be released from confinement or even to have his conviction set aside. Instead, he is merely seeking an opportunity to be properly heard" in the form of a state court hearing "where he may present evidence that he has met the new standard announced in his case by the State's Supreme Court." Appellee's Br. 3, 2. Further, in this appeal Appellee does not contend that rejection of the *Spann* test and adoption of the *Jamison* test by the state supreme court violates federal law; rather, he challenges the application of that test to his case without an opportunity to be heard.

10

A state prisoner must overcome many hurdles before a federal court may entertain his § 2254 petition. First and foremost, a petitioner may obtain relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

Crucially, "[a] state prisoner has no federal constitutional right to post-conviction proceedings in state court." *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) (citing *Lackawanna Cty. Dist. Att'y v. Coss*, 532 U.S. 394, 402 (2001)). Therefore, "even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." *Id*.; *see Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998) (where a petitioner argued that the state supreme court denied him equal protection when it determined in a state collateral proceeding that he could be tried as an adult in circuit court, there was no "basis for federal habeas relief" because the petitioner was "not . . . detained as a result of" that determination); *see also Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas application." (alterations, citations, and internal quotation marks omitted)); *United States v. Dago*, 441 F.3d 1238, 1248 (10th Cir. 2006) ("[D]ue process challenges to post-conviction procedures fail to state constitutional

claims cognizable in a federal habeas proceeding."); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief.").

B.

Here, Appellee is "in custody" pursuant to a valid guilty plea, not the state supreme court's decision declining to give him a hearing on application of the *Jamison* test. Significantly, Appellee does not point to any constitutional infirmity regarding his guilty plea. Rather, he raises a due process and equal protection challenge to a state post-conviction proceeding. This is quite simply an attack on a proceeding collateral to detention, and not to the detention itself. Therefore, "because [Appellee's] due[]process claims relate only to the [state] court's adjudication of his state post-conviction motion, we are without power to consider them." *Lawrence*, 517 F.3d at 717.

Instead, in his response brief, Appellee attempts to draw a comparison to *Jackson v. Virginia*, 443 U.S. 307 (1979). *See* Appellee's Br. 22, 23. In *Jackson*, the defendant was found guilty after a bench trial of premeditated first-degree murder under Virginia law. Jackson admitted that he shot and killed the victim, but he argued that he acted in self defense, and that he was too intoxicated to form the requisite intent. *See Jackson*, 443 U.S. at 311. After sentencing, Jackson filed a petition for writ of error with the Virginia Supreme Court, which alleged "the trial Court erred in finding [him] guilty of first degree murder in light of the evidence introduced on behalf of the Commonwealth, and on unwarranted inferences drawn from this evidence," and he also "contended that an affirmance would violate the Due Process Clause of the Fourteenth Amendment." *Id*. at

12

311 & n.4 (internal quotation marks omitted). The Virginia Supreme Court found no reversible error. *See id*. at 311.

Jackson then filed a federal habeas petition, "raising the same basic claim," and the district court granted the petition, finding the record to be "devoid of evidence of premeditation." *Jackson*, 443 U.S. at 312. The Fourth Circuit reversed, and the Supreme Court granted certiorari to consider the "narrow" question of whether a federal district court, when reviewing a state court conviction after a trial, must consider whether "there was *any* evidence to support" the conviction, or rather, whether there was *sufficient* evidence "to justify a rational trier of the facts to find guilty beyond a reasonable doubt." *Id*. at 312–13 (emphasis in original). As such, that question "goes to the basic nature of the constitutional right recognized in [*In re Winship*, 397 U.S. 358, 364 (1970) (holding that a person may not be convicted "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged")]." *Id*. at 313.

This case is markedly different from *Jackson*, where the Court noted that Jackson's claim was "cognizable in a federal habeas corpus proceeding" because he "alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt." 443 U.S. at 321. Here, the judgment Appellee challenges is a state court order applying a state law test to Appellee's post-conviction petition without the benefit of a hearing. But in *Jackson*, the petitioner challenged the validity of the underlying post-trial conviction, pursuant to which he was being held in "custody."

13

Indeed, Appellee admits that "shortcomings in a State's post conviction process are not in and of themselves grounds for federal habeas relief." Appellee's Br. 26. Instead, he suggests that because of the state supreme court's ruling, he will never have a chance to bring a *Jackson* sufficiency claim in state court; therefore, he will not (and did not) have a chance to exhaust his remedies and then bring a federal petition to attack his underlying guilty plea. But this argument turns § 2254 on its head. By its plain language, § 2254(a) requires the petitioner -- first and foremost -- to be in custody pursuant to a violation of the Constitution or federal law. The statute does not require the state court to give Appellee the "opportunity" he seeks, *id.*, i.e., multiple bites at the apple to put himself in a position where a *Jackson* claim might finally be raised. [2]

C.

At base, Appellee challenges the constitutionality of the state supreme court's decision to apply a new state law test to him without a hearing on post-conviction review. The problem with this argument is that Appellee is simply not in custody pursuant to that judgment. Rather, he is in custody pursuant to a guilty plea -- the validity of which he does not challenge. Therefore, his petition is not cognizable and should have been dismissed by the district court.

---

[2] The district court cited *Washington v. Texas*, but that case established a person's Sixth Amendment right to present one's own witnesses and establish a defense at a state trial, in the face of a state statute that prevented accomplices from being witnesses for one another. *See* 388 U.S. 14, 18–19 (1967). Contrary to the district court's suggestion, it does not stand for the proposition that a person who pleads guilty to a crime must be entitled to a new trial with a new witness upon the discovery of new evidence.

14

IV.

For the foregoing reasons, we vacate the district court's judgment and remand with instructions to dismiss Appellee's petition.

*VACATED AND REMANDED*