20335

Mrs. James R. HARTMAN, a/k/a Sadie Hartman, Respondent-Appellant, v. The CITY OF COLUMBIA, South Carolina and the Zoning Board of Adjustment of the City of Columbia, South Carolina, Appellants-Respondents.

(232 S. E. (2d) 15)

*Roy D. Bates, James W. Pearce,* and *Jean Toal,* of Columbia, *for Appellants-Respondents,*

*John A. Mason, Esq.,* of Columbia, *for Respondent-Appellant,*

*Roy D. Bates, James W. Pearce,* and *Jean Toal,* of Columbia, *for Appellants-Respondents, in Reply,*

January 4, 1977.

LITTLEJOHN, Justice:

This case arises out of the efforts of Mrs. Sadie Hartman (Landowner) to obtain a variance from the Zoning Board of Adjustment of the City of Columbia, so as to permit her to establish a child day care center in an area zoned for residences only.

The Zoning Administrator denied her request, whereupon she appealed to the Board of Adjustment. After a hearing, the Board, by a 2-2 vote (one member being absent), denied the appeal and affirmed the action of the Administrator. As permitted by §§ 47-1014, -1015, Code of Laws of South Carolina (1962), the Landowner appealed the action of the Board to the circuit court. The judge of that court heard the appeal based on the transcript of record made up at the Board hearing. The circuit judge [1] reversed the Board and granted the Landowner a special exception, or variance, by his order filed November 15, 1975.

*Oral* notice of the City's intention to appeal was given counsel for the Landowner on November 22, 1975, which was within the ten (10) days allowed for serving notice of

---

[1] Judge Eltzroth.

intention to appeal. *Written* notice of intention to appeal was delieverd to counsel for the Landowner on December 2, 1975, and was predated by him to November 22, 1975, the same date oral notice was given.

Thereafter, counsel for the Landowner moved before the lower court for an order dismissing the appeal on the ground that *written* notice had not been timely served. The lower court [2] refused the motion to dismiss, allowing the appeal of the City to go forward.

Before us now is an appeal by the Landowner, charging error in the lower court's refusal to dismiss the City's appeal, and also the appeal by the City of the judge's order on its merits.

We first discuss the Landowner's appeal. Counsel for the Landowner contends that the acceptance of service of the notice of intention to appeal and its predating was conditional, and would have us look behind this instrument to find an alleged irregularity. The instrument, signed and dated by counsel, is valid on its face and we refuse to allow him to impeach his own signature under the circumstances of this case.

We now come to the appeal by the City, alleging error on the part of the judge in granting the variance. The trial judge may not reverse the ruling of the Board of Adjustment merely because his views of the facts are different. The standard of review is discussed in the case of *Talbot v. Myrtle Beach Bd. of Adjustment,* 222 S. C. 165, 72 S. E. (2d) 66 (1952), to which standard we adhere. The standard is discussed in detail; when analyzed, it is in essence a statement that the Board should not be reversed by the trial judge except in case of an abuse of discretion. A careful study of the record convinces us that the trial judge was correct in his assessment of the Board's decision and, accordingly, we affirm.

---

[2] Judge Grimball.

The Landowner has a brick residence-type house on a lot located at 3401 Rosewood Drive. It is a block deep and is bounded by Rosewood Drive, Ott Road, Yale Avenue, and by a lot occupied by a resident who does not oppose the variance. She seeks to use this property to establish a day care nursery for 50 children, to be operated from 6:30 a. m. until 6:15 p. m., five days per week. She would serve three-, four- and five-year-old children, with a staff of specially-trained teachers and other necessary personnel. Rosewood Drive is a heavily traveled throughway accommodating more than 12,000 vehicles per day. Ott Road serves some 2,100 cars per day. Traffic on Yale Avenue is not indicated. The Landowner's property is directly across the street from Rosewood Elementary Public School, which formerly served more than 700 students, but now serves only about 450 pupils. The Landowner's property is approximately in the middle to a six to seven block residential area on Rosewood Drive. The property to the east and to the west is zoned commercial. Within two blocks of the Landowner's property are located two other similar day nurseries, apparently granted variances heretofore.

The zoning ordinance specifically states that special exceptions for day nurseries and kindergartens in residential areas may be allowed. It further sets out several requirements and allows the Board to "determine if additional safeguards and conditions are appropriate in order to protect children accommodated from detrimental characteristics from use of adjacent areas, or to protect adjacent uses from potentially incompatible characteristics arising from such day nurseries and kindergartens." We need not here concern ourselves with whether the requirements have been met at this time. The Landowner is willing and expects to fully comply with the ordinance. In keeping with § 7-7, a portion of which is quoted hereinabove, the trial judge has set out certain limitations and/or requirements relative to number of children to be served, sign to be erected, fence to be erected, shrubbery to be planted, drive to be built and times

of operation. These would appear reasonable, but are subject to changes and implementation as needed hereafter in the discretion of the Board, which must administer the zoning ordinance.

Generally, zoning laws do not frown upon schools in residential zones. We need not technically determine whether the nursery which the Landowner would establish is a school for teaching or a nursery for entertainment and play. No doubt day nurseries and schools have much in common. The fact that a nursery is much like a school is persuasive on the issue of whether a variance should be granted as a matter of discretion.

Counsel argues that the establishment of a nursery will add to the traffic problem in that area. While it is true that some additional traffic will be generated, the additional movement of motor vehicles will be rather negligible when compared with the 12,000 vehicles moving daily on Rosewood Drive and the 2,100 vehicles moving daily on Ott Road. The plan of operation contemplates that the entrance and exit for loading and unloading will not be from busy Rosewood Drive, but will be from Ott Road and/or Yale Avenue.

Counsel also argues that the property values will be affected in that area. Zoning and/or the granting of variances normally affect property values in some way. Some property values are enhanced and some are impaired. Such is an element to be considered, but is not controlling.

The house and lot here involved was apparently formerly highly desirable residential property. Age of the building, traffic congestion and the commercialization of nearby property, has made the premises less desirable for residential purposes. In the pattern of city growth, such property becomes less desirable for residential purposes and more desirable for commercial purposes every day. It is in a twilight zone—not ready for full commercialization, and unsuited as a desirable family-dwelling house. The Landowner has heretofore ob-

tained a rooming-house permit. It will never be more desirable for a residence and will inescapably become more desirable for business purposes. Such properties are oftentimes problems for zoning boards of adjustment. It is for just such properties that the rule permitting variances was created. It is not unusual in these cases for some of the neighbors to either favor or be tolerant of the variance and for some of the neighbors to bitterly contest the same. It is the pattern that such residences are oftentimes converted to rooming houses, boarding houses, apartments, offices, and eventually torn down, rezoned and replaced by a strictly business enterprise. The question is: When should the change take place? These are some of the considerations of which the Board and the court should take cognizance.

In hearing the appeal from the action of the Board, it became the duty of the trial judge to judicially weigh the facts, which are not greatly in contest, and to apply the law, which is well established. The issue is a close one, but after a full consideration of the entire record we conclude that the City has failed to carry the burden of proving that he erred in reversing the Board, and accordingly the order is

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.