762 S.E.2d 15

**The STATE, Petitioner,**

v.

**James Ervin RAMSEY, Respondent.**

**Appellate Case No. 2012–213017.**

**No. 27418.**

Supreme Court of South Carolina.

Heard March 18, 2014.

Filed July 16, 2014.

Rehearing Denied Aug. 22, 2014.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Deputy Attorney General Robert D. Cook, Senior Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Christina J. Catoe and Deputy Assistant Attorney General Curtis A. Pauling, III, all of Columbia, for Petitioner.

Christopher A. Wellborn, of Christopher A. Wellborn P.A., of Rock Hill, for Respondent.

Justice HEARN.

The Court granted certiorari to review the court of appeals' opinion in *State v. Ramsey*, 398 S.C. 275, 727 S.E.2d 429 (Ct.App.2012), affirming the dismissal of a criminal domestic violence (CDV) charge against James Ramsey on the ground that the magistrate lacked authority to hear the case. Specifically, the court found the crime was not committed "in the presence of a law enforcement officer" as required by Section 56–7–15(A) of the South Carolina Code (2006), *amended by* section 56–7–15(A) (Supp.2013). We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On February 18, 2006, Deputy Chris Farrell responded to a domestic call at the home of Ramsey's estranged wife (Wife). Farrell interviewed both parties and noticed a bruise on Wife's hand, which she indicated was the result of Ramsey attempting to grab a phone from her. Based on his observations, Deputy Farrell issued Ramsey a uniform traffic ticket for CDV.[1]

Ramsey moved to dismiss the charges for lack of jurisdiction. He argued that because the CDV was not committed in the presence of the officer, Deputy Farrell could not issue him a uniform traffic ticket under section 56–7–15(A), and absent a valid uniform traffic ticket, the magistrate lacked authority to hear the case. The magistrate agreed and dismissed the

---

[1]. Ramsey was also arrested for burglary at the scene, but that charge was dismissed.

charges. The circuit court affirmed the dismissal on the alternative basis that only offenses listed under Section 56–7–10 of the South Carolina Code (2006), *amended by* 56–7–10 (Supp.2013), allowed for prosecution solely based on a uniform traffic ticket and at the time the alleged crime was committed, CDV was not listed in section 56–7–10. Therefore, the circuit court concluded the magistrate did not have jurisdiction to hear the CDV charge until an arrest warrant was issued.

The court of appeals affirmed the dismissal. Although the court disagreed with the circuit court's conclusion that CDV could never be prosecuted in magistrate court absent an arrest warrant, it found that pursuant to section 56–7–15, an officer could only issue a uniform traffic ticket for CDV if the crime was committed in his presence. *Ramsey,* 398 S.C. at 280, 727 S.E.2d at 432. Because Deputy Farrell did not see the crime take place, but arrived on the scene after the fact, the court held the uniform traffic ticket was invalid and the charges were properly dismissed. *Id.* at 283, 727 S.E.2d at 433. This Court granted certiorari to review the court of appeals' opinion.

## ISSUE PRESENTED

Did the court of appeals err in affirming the dismissal of Ramsey's CDV charge because the offense did not occur in the presence of the officer?

## STANDARD OF REVIEW

 "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.,* 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). The text of a statute is considered the best evidence of the legislative intent or will, and the courts are bound to give effect to the expressed intent of the legislature. *Grier v. AMISUB of S.C., Inc.,* 397 S.C. 532, 535, 725 S.E.2d 693, 695 (2012). "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).

## LAW/ANALYSIS

The State argues the court of appeals erred in holding that under these circumstances, a uniform traffic ticket could not be validly issued pursuant to section 56–7–15(A). We disagree.

We begin our analysis, as we must, with the plain language. Pursuant to Section 22–3–710 of the South Carolina Code (2007): "All proceedings before magistrates in criminal cases shall be commenced on information under oath, plainly and substantially setting forth the offense charged, upon which, and only which, shall a warrant of arrest issue." Section 56–7–10 provides an exception to the warrant requirement by allowing the issuance of a uniform traffic ticket to initiate proceedings before the magistrate for specified offenses. At the time of the incident, the list of specified offenses did not include CDV. However, section 56–7–15(A) provided: "The uniform traffic ticket ... may be used by law enforcement officers to arrest a person for an offense *committed in the presence of a law enforcement officer* if the punishment is within the jurisdiction of magistrate's court and municipal court." (emphasis added).

The text of the statute explicitly authorizes use of a uniform traffic ticket in circumstances where the offense was "committed in the presence of a law enforcement officer." Although the State asks us to construe "in the presence" to include crimes that were freshly committed, we perceive no ambiguity in the language that would allow us to accept such a broad construction. The statute plainly states the offense must be committed in the presence of the officer. This Court has no authority to impose another meaning where the legislative language is clear.

Nevertheless, the State argues there is precedent supporting the proposition that "in the presence" should be interpreted expansively so as to include freshly committed crimes. The State relies on *State v. Martin*, 275 S.C. 141, 268 S.E.2d 105 (1980), where the Court considered the legality of a warrantless arrest for operating a vehicle under the influence when the officer did not witness the defendant driving the vehicle, but arrived at the scene after an accident. In its analysis, the Court observed that: "It is the law of this State that an officer

cannot arrest one charged with a misdemeanor, not committed in his presence, without a proper warrant . . ." *Id.* at 144, 268 S.E.2d at 107 (quoting *State v. Mims,* 263 S.C. 45, 48, 208 S.E.2d 288, 289 (1974)). However, the Court found this principle was qualified by Section 23–13–60 of the South Carolina Code (2013), which allows an arrest without a warrant for "any suspected freshly committed crime." *Id.* at 145, 268 S.E.2d at 107. The Court therefore harmonized these two distinct concepts and held "while generally an officer cannot arrest, without a warrant, for a misdemeanor not committed in his presence, an officer can arrest for a misdemeanor when the facts and circumstances observed by the officer give him probable cause to believe that a crime has been freshly committed." *Id.* at 145–146, 268 S.E.2d at 107. Although the facts similarly involved a freshly committed offense, the resolution in *Martin* relied on a statute that specifically allowed warrantless arrests for "freshly committed" crimes, rather than ones committed in the presence of the officer. The case unequivocally indicates that the Court regards these as two distinct concepts.

Furthermore, use of the term "freshly committed" in section 23–13–60 illustrates the legislature knows how to draft a statute extending an officer's authority to freshly committed crimes. *See also* S.C.Code Ann. § 16–25–70 (2003) (authorizing officers to effectuate warrantless arrests in suspected cases of domestic violence where the officer "has probable cause to believe that the person is committing or has freshly committed" an act of criminal domestic violence, even if "the act did not take place in the presence of the officer"). The legislature could have employed this phraseology when enacting section 56–7–15, but it did not and we must give such omission effect. *See* 82 C.J.S. *Statutes* § 478 (2014) ("[W]here a statute contains a given provision, the omission of such a provision from a similar statute concerning a related subject is significant to show that a different intention has existed.").

Nevertheless, the State entreats us to accept the reasoning of an Attorney General's opinion that concludes under section 56–7–15(A), "So long as the officer has probable cause to believe that the offense of criminal domestic violence has been freshly committed, the officer may make the charge by way of the Uniform Traffic Ticket and such ticket bestows jurisdic-

tion...." 2003 WL 22862788 at *4 (S.C.A.G. Nov. 13, 2003). It is well settled that although it may be persuasive authority, an Attorney General's opinion is not binding on this Court, and because we disagree with the reasoning, we decline to adopt it. *See Charleston Cnty. Sch. Dist. v. Harrell*, 393 S.C. 552, 560–61, 713 S.E.2d 604, 609 (2011) ("Attorney General opinions, while persuasive, are not binding upon this Court.").

Specifically, the Attorney General's opinion relies on cases we deem inapposite, *Martin* and *State v. Biehl*, 271 S.C. 201, 246 S.E.2d 859 (1978). As discussed *supra*, *Martin* does not support the proposition that "in the presence" encompasses crimes that are freshly committed. In *Biehl*, the Court addressed the scope of section 56–7–10, which generally allows for the issuance of uniform traffic tickets for listed offenses. 271 S.C. at 203, 246 S.E.2d at 860. That statute contains no limiting language as to when a ticket can be issued. The Court therefore found:

> While we do not hold that an officer may arrest for a misdemeanor not committed within his presence, we do hold that the issuance of a uniform traffic ticket vests jurisdiction in the traffic court, even though the officer may not have personally seen the accused person commit the offense with which he is charged.

*Id.* at 204, 246 S.E.2d at 860. Subsequent to the Biehl decision, the legislature enacted section 56–7–15 and specifically included the limiting language that a uniform traffic ticket can be utilized pursuant to that statute where a crime was committed in the presence of the officer. We find this inclusion evinces the South Carolina General Assembly's intent that circumstances where an officer can issue a uniform traffic ticket under section 56–7–10 are distinct from those under section 56–7–15, and *Biehl's* holding is inapplicable to our analysis.

██ However, the State reasons that because the General Assembly did not amend section 56–7–15(A) in response to the Attorney General's opinion, it must agree with the result. The State is correct that the Court has accorded some significance to the inaction of the General Assembly in light of an opinion by the Attorney General. *See Calhoun Life Ins. Co. v. Gambrell*, 245 S.C. 406, 414, 140 S.E.2d 774, 778 (1965) (noting

that in "concluding that [the Insurance Commission has no power to regulate certain rates and commissions], a fact of particular importance is that the legislature has not seen fit to take any action subsequent to the opinion of the Attorney General [reaching the same conclusion.]"). However, legislative inaction cannot legitimize a flawed analysis nor does it alter our obligation to rely on the plain language of a statute.

We therefore find unavailing the State's arguments that we should look beyond the plain language of the statute in interpreting its scope. In drafting section 56–7–15, the General Assembly chose to confine the use of uniform traffic tickets to instances where an offense is committed in the presence of a law enforcement officer. Because there is no contention Deputy Farrell witnessed the incident, the uniform traffic ticket could not be used to initiate proceedings in magistrate court.

## CONCLUSION

For the aforementioned reasons, we hold that at the time of the alleged crime, section 56–7–15 required an officer to be present during the commission of a crime to validly issue a uniform traffic ticket. Therefore, the magistrate properly dismissed the CDV charge. Accordingly, we affirm the court of appeals' opinion.[2]

PLEICONES, BEATTY, JJ., and Acting Justice JAMES E. MOORE, concur. TOAL, C.J., concurring in result only.

---

2. However, we clarify that the statute at issue has been revised. As of June 13, 2013, section 56–7–15(A) provides: "The uniform traffic ticket ... may be used by law enforcement officers to arrest a person for *an offense that has been freshly committed or is committed in the presence of a law enforcement officer* if the punishment is within the jurisdiction of magistrates court and municipal court." (emphasis added). Effective the same day, section 56–7–10(A) was amended to specifically include CDV first and second as offenses subject to the uniform traffic ticket provisions. Additionally, section 56–7–10(B) was amended to provide: "In addition to the offenses contained in subsection (A), a uniform traffic ticket may be used in an arrest for a misdemeanor offense within the jurisdiction of magistrates court that has been *freshly committed or is committed in the presence of a law enforcement officer.*" (emphasis added). Accordingly, we recognize this opinion has been abrogated and its holding applies only to incidents occurring prior to June 13, 2013.