# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Tony Tujuan Sweet, Appellant.

Appellate Case No. 2024-000286

———————

Appeal from Greenville County
Perry H. Gravely, Circuit Court Judge

———————

Opinion No. 28297
Heard June 3, 2025 – Filed August 20, 2025

———————

**AFFIRMED**

———————

Appellate Defender Sarah Elizabeth Shipe, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia; and Solicitor Cindy Smith Crick, of Greenville,
all for Respondent.

———————

**CHIEF JUSTICE KITTREDGE:** Appellant Tony Sweet was arrested after law
enforcement found a significant amount of methamphetamine and fentanyl in his
car. Sweet ultimately pled guilty to trafficking in methamphetamine and trafficking
in illegal drugs in violation of sections 44-53-375(C) and 44-53-370(e)(3) of the
South Carolina Code (2018), respectively. Two years later, he unsuccessfully filed
a motion to vacate his guilty plea to one of the charges, trafficking in illegal drugs.

Sweet argued section 44-53-370(e)(3) only criminalizes trafficking natural opioids and not synthetic opioids like fentanyl, and therefore, he pled guilty to a "non-existent" offense. Even if we were to assume that Sweet is correct—a debatable point, as we discuss further below—the fact that he pled guilty based on his indisputably criminal conduct waived any ability to challenge the alleged lack of factual and legal basis for the actual plea he entered. We therefore affirm.

## I.

Law enforcement arrested Sweet after finding 237 grams of methamphetamine and 7.64 grams of fentanyl in the car he was driving. The State then indicted Sweet for trafficking in methamphetamine and trafficking in illegal drugs.[1] As to the latter indictment, the State alleged Sweet violated section 44-53-370(e)(3)(a)(1) by possessing "4 grams or more but less than 14 grams of Fentanyl; a morphine, opium, salt, isomer, or salt of an isomer thereof, including heroin, as described in [the statutes listing Schedule I and II drugs]."

In May 2022, Sweet entered into a deferred plea agreement under which he agreed to become a confidential informant in exchange for deferred sentencing on the two trafficking charges. Six months later, Sweet was re-arrested on new drug charges after a search of his residence revealed "nearly a kilo of methamphetamine, 28.68 grams of cocaine; 8.73 grams of heroin; 20.62 grams of [a] heroin[-]fixed fentanyl mixture; . . . 6.34 grams of cocaine base; and a handgun."[2]

---

[1] "Trafficking in illegal drugs" is the General Assembly's chosen name for the crime set forth in section 44-53-370(e)(3), and as such, this is the phrasing we will use to describe this crime throughout the opinion. In this appeal, Sweet challenges whether fentanyl classifies as an "illegal drug" as that term is described under the statute. While we explore this issue more fully below, we note at the outset that it is unlawful in South Carolina for a person to possess a controlled substance—*i.e.*, a scheduled drug—unless "obtained directly from, or pursuant to[,] a valid prescription." S.C. Code Ann. § 44-53-370(c); *id.* § 44-53-110(6) (2018). Fentanyl is classified as a Schedule II drug. S.C. Code Ann. § 44-53-210(c)(6) (2018). Thus, fentanyl falls within those substances the legislature considers to be "illegal drugs" if possessed without a valid prescription. It is undisputed here that Sweet did not have a valid prescription for the fentanyl found in his car. Accordingly, while Sweet does not deny he possessed an "illegal drug" in general terms, he asks us to resolve whether fentanyl classifies as an "illegal drug" under subsection (e)(3) in particular.

[2] Sweet faced additional criminal charges related to the drugs found in that 2022

In October 2023, Sweet filed a motion to vacate his plea for trafficking in illegal drugs. In his motion, Sweet argued that after he entered his guilty plea, a different circuit judge in a wholly unrelated criminal case had found that fentanyl was "not a substance that can be lawfully included in any indictment under § 44-53-370(e)(3)." Sweet therefore contended his plea was not knowing and voluntary because, had he known of the circuit judge's order in the unrelated case, he would not have pled guilty to trafficking in illegal drugs. In the alternative, Sweet argued the plea judge lacked subject matter jurisdiction to accept his plea because the indictment for trafficking in illegal drugs "fail[ed], as a matter of law, to state an offense [given that] fentanyl is not included in the cited statute."

At the hearing to resolve the motion to vacate and to impose sentence on at least the unchallenged guilty plea, Sweet relied solely on the arguments in his motion. He failed to introduce any scientific or other evidence at the hearing that would bear on the question of whether fentanyl was included in the ambit of section 44-53-370(e)(3).[3] In response, the State argued Sweet had waived all defenses at the time of his plea, and therefore, he waived any argument that fentanyl was not included within section 44-53-370(e)(3). Moreover, the State noted that possession of significant amounts of fentanyl was not a "non-existent" crime; rather, possession with intent to distribute (PWID) fentanyl was definitively a crime at the time of Sweet's arrest.[4] As correctly explained by the State at the hearing, had the State charged Sweet with PWID fentanyl rather than trafficking in illegal drugs, Sweet would have faced a lengthier minimum *and* maximum sentence due to his prior, extensive criminal record.[5] The State therefore explained, "So he's pled and actually

---

search of his residence, but those charges were later dismissed without prejudice following his sentencing hearing for the two trafficking charges.

[3] In contrast, in the unrelated circuit court order cited by Sweet in his motion to vacate, the defendant introduced scientific evidence from a law enforcement expert regarding the relationship (or lack thereof) between fentanyl and the substances listed in section 44-53-370(e)(3).

[4] *See* S.C. Code Ann. § 44-53-370(a)(1), (b)(1) (prohibiting possessing Schedule II narcotics with the intent to distribute); *id.* § 44-53-110(29)(a) (defining narcotics to include "opiates"); *id.* § 44-53-210(c)(6) (listing fentanyl as a Schedule II "opiate").

[5] More specifically, the sentence range for trafficking in illegal drugs (four to fourteen grams, first offense) is seven to twenty-five years' imprisonment. S.C. Code Ann. § 44-53-370(e)(3)(a)(1). In comparison, because of Sweet's multiple prior PWID convictions, the sentence range for PWID fentanyl (third or subsequent

gotten the benefit of pleading to trafficking first offense."

The court summarily denied Sweet's motion to vacate his plea but did not specifically rule on the merits of whether fentanyl fell under section 44-53-370(e)(3), explaining only, "[I]t's actually to his benefit that he pleads to trafficking versus PWID, so I'm gonna deny [his] motion to vacate the plea." The circuit court then sentenced Sweet to twenty-two years' imprisonment for both the unchallenged trafficking in methamphetamine and the challenged trafficking in illegal drugs charges, the sentences to be run concurrently. Sweet appealed, and we certified his appeal from the court of appeals pursuant to Rule 204(b), SCACR.

## II.

Section 44-53-370(e) provides, in relevant part,

> Any person who . . . is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of:
>
> . . .
>
>> (3) four grams or more of *any morphine, opium, salt, isomer, or salt of an isomer thereof, including heroin, as described in Section 44-53-190 or 44-53-210* . . . is guilty of a felony which is known as "trafficking in illegal drugs" and, upon conviction, must be punished as follows if the quantity involved is:
>>
>>> (a) four grams or more, but less than fourteen grams:
>>>
>>>> 1. for a first offense, a term of imprisonment of not less than seven years nor more than twenty-five years . . . .

S.C. Code Ann. § 44-53-370(e) (emphasis added).

Sweet argues that fentanyl does not fit within the above-italicized language of section 44-53-370(e)(3). More specifically, Sweet contends each drug listed in subsection (e)(3)—morphine, opium, and heroin—is either a natural or

offense) is ten to thirty years' imprisonment. S.C. Code Ann. § 44-53-370(b)(1). In pleading to the trafficking charge, Sweet received the benefit of a reduced sentencing range.

semisynthetic opioid, whereas fentanyl is a synthetic opioid.  Sweet therefore claims that fentanyl is "not heroin, morphine, or opium, or a derivate of any of those drugs," including in salt or isomer form.  Thus, according to Sweet, subsection (e)(3) necessarily excludes fentanyl from the ambit of "trafficking in illegal drugs."  Sweet contends that the fact he could have been charged with PWID fentanyl and (because of his substantial criminal record) been subjected to a more severe sentence is of no moment.  Sweet posits that the State elected to charge him with trafficking under section 44-53-370(e)(3) and may not seek refuge from another statutory provision that clearly criminalizes the possession of fentanyl.  As a result, Sweet argues the State unlawfully indicted him for a "non-existent" offense.  He further contends the fact that he pled guilty to a non-existent offense deprived the circuit court of subject matter jurisdiction to accept his plea, and because subject matter jurisdiction cannot be waived by a guilty plea, he is still entitled to raise this issue despite his plea. *See generally State v. Munsch*, 287 S.C. 313, 314, 338 S.E.2d 329, 330 (1985) (per curiam) ("Guilty pleas act as a waiver of all non-jurisdictional defects and defenses.").  We disagree.

## A.

In interpreting a statute, our primary role is to ascertain and effectuate the intent of the legislature. *State v. Ramsey*, 409 S.C. 206, 209, 762 S.E.2d 15, 16–17 (2014).  When the text of the statute is plain and unambiguous, and conveys a clear and definite meaning, the legislative intent must be determined from the statutory language alone. *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).  "We should consider, however, not merely the language of the particular clause being construed, but the word[s] and [their] meaning[s] in conjunction with the purpose of the whole statute and the policy of the law." *Whitner v. State*, 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997).

Whether the legislature intended fentanyl to be included in section 44-53-370(e)(3) is debatable.  The State has advanced a good faith argument that the legislature intended subsection (e)(3) to encompass fentanyl.  While Sweet relies heavily on the definitions used by the scientific and medical communities to demonstrate fentanyl should be excluded from the statute, the General Assembly does not utilize or mirror the scientific or medical definitions throughout Title 44, Chapter 53 of the South Carolina Code.[6] *See Brown v. Martin*, 203 S.C. 84, 88, 26 S.E.2d 317, 318 (1943)

---

[6] For example, the scientific and medical communities differentiate between the terms "opioid" and "opiate": the former term encompasses *all* natural, semisynthetic, and synthetic substances that interact with opioid receptors in the body; while the latter term encompasses *only* natural opioids derived directly from the opium poppy

("The General Assembly has power to prescribe legal definitions of its own language, and such definitions are generally binding upon the Courts, and should prevail." (citing *Windham v. Pace*, 192 S.C. 271, 283, 6 S.E.2d 270, 275 (1939)). Rather, there are a number of examples—in subsection (e)(3) and beyond—where the General Assembly clearly intended the terms used to be read more broadly than their scientific or medical definitions.[7]

Regardless, we need not resolve that issue today because, even if Sweet were correct and the General Assembly did not intend section 44-53-370(e)(3) to encompass fentanyl, any possible error here does not implicate the circuit court's subject matter jurisdiction. *See State v. Gentry*, 363 S.C. 93, 100, 610 S.E.2d 494, 498 (2005) ("[S]ubject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong . . . ."). Clearly, the circuit court has subject matter jurisdiction to accept guilty pleas to cognizable crimes, such as trafficking in illegal drugs.

## B.

It is true that there can be other, non-waivable "jurisdictional" defects in criminal prosecutions. *See, e.g.*, *State v. Sims*, 423 S.C. 397, 401–02, 814 S.E.2d 632, 634 (Ct. App. 2018) (providing four examples). To that end, Sweet points to a previous statement by this Court that, when read out of context, could seemingly resolve the issue in his favor. *See Whitner*, 328 S.C. at 5, 492 S.E.2d at 779 ("Under South

---

plant. In contrast, section 44-53-110 defines an "opiate" as "any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having addiction-forming or addiction-sustaining liability." S.C. Code Ann. § 44-53-110(31). This definition seemingly sweeps natural, semisynthetic, and synthetic opioids into the General Assembly's intended definition of an "opiate." Similarly, in section 44-53-210(c), the General Assembly lists of a number of Schedule II "opiates" that include exclusively semisynthetic and synthetic opioids such as fentanyl.

[7] As a single example, the relevant portion of subsection (e)(3) criminalizes the possession of more than four grams of "any morphine, opium, salt, isomer, or salt of an isomer thereof, including heroin." Necessarily then, by using the phrase "*including* heroin," the General Assembly intended one of the preceding terms to be read broadly enough to, in fact, include heroin within its purview. However, heroin is an acetylation of morphine, not morphine itself, nor opium, nor a salt or isomer of either of those two compounds.

Carolina law, a circuit court lacks subject matter jurisdiction to accept a guilty plea to a nonexistent offense." (citing *Williams v. State*, 306 S.C. 89, 91, 410 S.E.2d 563, 564 (1991))). However, both *Whitner* and *Williams* were decided in the 1990s. The timing of those decisions is significant because of subsequent developments in the law and the Bench and Bar's understanding of the scope of subject matter jurisdiction.

More specifically, in 2002, the United States Supreme Court held that a defective federal indictment does not deprive a court of subject matter jurisdiction. *United States v. Cotton*, 535 U.S. 625, 630 (2002).[8] The Supreme Court explained that, in the past, the federal understanding of subject matter jurisdiction had been improperly expanded beyond its true boundaries due to no-longer-applicable limitations in the appellate process. *Id.* at 629–30 (explaining the prior, expansive notion of subject matter jurisdiction was "a product of an era in which [the Supreme] Court's authority to review criminal convictions was greatly circumscribed," and was therefore "a fiction" developed to remedy the fact that, in the past, "a defendant could not obtain direct review of his criminal conviction in the Supreme Court" (cleaned up)), *overruling Ex parte Bain*, 121 U.S. 1 (1887). The Supreme Court expressly repudiated its prior, broad interpretation of subject matter jurisdiction, stating the "elastic concept of jurisdiction is not what the term 'jurisdiction' means today, *i.e.*, the court's statutory or constitutional power to adjudicate the case." *Id.* at 630 (cleaned up).

Three years later, in 2005, this Court likewise clarified the appropriate scope of subject matter jurisdiction as it related to the sufficiency of a state indictment. *See Gentry*, 363 S.C. at 99–101, 610 S.E.2d at 498–99. More specifically, the *Gentry* Court explained that this Court, too, had previously and improperly expanded the meaning of subject matter jurisdiction beyond its true boundaries, but—in line with *Cotton*—the "subject matter jurisdiction of the circuit court and the sufficiency of the indictment are two distinct concepts[,] and the blending of these concepts serves only to confuse the issue." *Id.* at 100–01, 610 S.E.2d at 498–99. The Court therefore "conclusively [held] that if an indictment is challenged as insufficient or defective, the defendant must raise that issue before [jeopardy attaches] and not afterwards[, including on appeal]." *Id.* at 101, 610 S.E.2d at 499.

---

[8] In *Cotton*, the defendant argued that because his federal indictment omitted the quantities of drugs—certain amounts of which would require the trial court to enhance his statutory sentence—the trial court lacked subject matter jurisdiction to impose the enhanced sentence. 535 U.S. at 628–29.

Given *Gentry*'s re-narrowing of the concept of subject matter jurisdiction, it is at best of questionable help for litigants to rely on pre-*Gentry* cases for authoritative statements of the law concerning subject matter jurisdiction. *See, e.g.*, *id.* at 105–07, 610 S.E.2d at 501–02 (containing a non-exhaustive list of forty-four cases *Gentry* overruled because they "combine[d] the concept of the sufficiency of an indictment and the concept of subject matter jurisdiction, *i.e.*, a trial court's power to hear a charge"). Regardless, we find *Whitner* and *Williams* factually distinguishable from Sweet's case. Unlike in *Whitner* and *Williams*, Sweet's conduct was unquestionably criminal; the only dispute here was under which statute his behavior fell (PWID or trafficking). We are not confronted with an indictment charging a truly nonexistent crime. Therefore, the circuit court had subject matter jurisdiction to resolve the criminal charges against him.

## C.

Consonant with the modern understanding, we reiterate that defects in an indictment charging a recognized crime do not deprive a circuit court of its subject matter jurisdiction over a case.[9] *Cotton*, 535 U.S. at 630; *Gentry*, 363 S.C. at 101, 610 S.E.2d at 499. Thus, even assuming there was a defect in charging Sweet for trafficking in illegal drugs based on his possession of fentanyl, that defect did not deprive the circuit court of subject matter jurisdiction to resolve the charges against him. *See United States v. Williams*, 341 U.S. 58, 66, 68–69 (1951) ("Though the trial court or an appellate court may conclude . . . that the facts stated in the indictment do not constitute a crime or are not proven, [the court] has proceeded with [subject matter] jurisdiction . . . ."); *Lamar v. United States*, 240 U.S. 60, 65 (1916) ("The objection that the indictment does not charge a crime against the United States goes only to the merits of the case [and not to subject matter jurisdiction].").

Moreover, a guilty plea is a solemn admission of guilt that creates a line of demarcation in the proceedings: at all points before crossing that line, the defendant may challenge the facts or substantive law against him. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Jamison v. State*, 410 S.C. 456, 470, 765 S.E.2d 123, 130 (2014). However, once that line is crossed, the defendant waives his ability to challenge any aspect of the merits of the case against him that does not implicate the court's subject matter jurisdiction. *See Tollett*, 411 U.S. at 267; *Jamison*, 410 S.C. at 468, 765 S.E.2d at 129; *see also, e.g.*, *Cotton*, 535 U.S. at 630; *Williams*, 341 U.S.

---

[9] There are limited exceptions to that general rule, but those exceptions are not implicated here. *See, e.g.*, *Menna v. New York*, 423 U.S. 61 (1975) (per curiam) (double jeopardy); *Blackledge v. Perry*, 417 U.S. 21 (1974) (retaliatory prosecution).

at 66, 68–69; *Lamar*, 240 U.S. at 65; *United States v. Scruggs*, 714 F.3d 258, 262–63 (5th Cir. 2013); *United States v. DeVaughn*, 694 F.3d 1141, 1154 (10th Cir. 2012).

Here, because the defect Sweet alleged was non-jurisdictional, he was required to raise his argument before jeopardy attached, *i.e.*, before he entered his guilty plea. Sweet's failure to do so waived his ability to challenge whether fentanyl falls within section 44-53-370(e)(3). *See United States v. Curcio*, 712 F.2d 1532, 1538–39 (2d Cir. 1983); *Sims*, 423 S.C. at 402, 814 S.E.2d at 634; *cf. People v. Genes*, 227 N.W.2d 241, 243 (Mich. Ct. App. 1975) ("A guilty plea to [a] charge entered as a part of a plea bargain may be accepted even though a jury conviction on the same charge might have to be reversed."); *People v. Foster*, 225 N.E.2d 200, 201–02 (N.Y. 1967) (expressing a similar sentiment).

As pointed out by the State during the sentencing hearing, Sweet secured a bargain for himself by agreeing to plead guilty, namely under these facts, by lowering the minimum and maximum sentence he faced under trafficking as compared to PWID. He cannot belatedly complain of a possible defect in that bargain. *See Gentry*, 363 S.C. at 101, 610 S.E.2d at 499 ("[I]f an indictment is challenged as insufficient or defective, the defendant must raise that issue before [jeopardy attaches] and not afterwards."); *Rollison v. State*, 346 S.C. 506, 510–11, 552 S.E.2d 290, 292 (2001) ("A defendant may, as part of a plea bargain, agree to plead guilty to a crime for which he has been indicted . . . , but of which he is not guilty. . . . All that is required before a plea can be accepted is that the defendant understand the nature and crucial elements of the charges, the consequences of the plea, and the constitutional rights he is waiving, and that the record reflect a factual basis for the plea."); *State v. Tumbleston*, 376 S.C. 90, 97, 654 S.E.2d 849, 853 (Ct. App. 2007) ("A ruling on a timely objection, before the jury is sworn, that an indictment is not sufficient will result in the quashing of the indictment *unless the defendant . . . pleads guilty*." (emphasis added)); *see also Foster*, 225 N.E.2d at 201–02 ("The defendant declined to risk his chances with a jury. He induced the proceeding of which he now complains. He made no objection or complaint when asked in the presence of his counsel whether he had any legal cause to show why judgment should not be pronounced against him, and judgment was thereafter pronounced. As a result, the range of sentence which the court could impose was cut in half—a substantial benefit to defendant. . . . While there may be question whether [the facts underlying the plea are] technically and logically consistent, such a plea should be sustained on the ground that it was sought by defendant and freely taken as part of a bargain which was struck for the defendant's benefit."); *Downer v. State*, 543 A.2d 309, 312 (Del. 1988); *McPherson v. State*, 163 P.3d 1257, 1261–62 (Kan. Ct. App. 2007).

We therefore affirm Sweet's conviction and sentence for trafficking in illegal drugs.

## III.

Given that this appeal stems from a guilty plea, we decline to address Sweet's science-based (but evidentiarily unsupported) argument that section 44-53-370(e)(3) does not encompass fentanyl, for even if we were to resolve the issue in Sweet's favor, the argument does not implicate the circuit court's subject matter jurisdiction to accept Sweet's guilty plea.[10] Accordingly, by pleading guilty, Sweet waived his ability to challenge the criminal charges against him on this basis. We therefore affirm his guilty pleas and sentences.

**AFFIRMED.**

**FEW, JAMES, HILL and VERDIN, JJ., concur.**

---

[10] Further lessening the need to resolve this issue on the merits, we note that, following Sweet's appeal, the General Assembly enacted section 44-53-370(e)(9)—specifically criminalizing trafficking in fentanyl—to remove any possible confusion over the scope of subsection (e)(3). We therefore do not anticipate this question to recur in subsequent criminal prosecutions.